UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARMELISHA AYERS,

    Plaintiff,

v.

RECEIVABLES PERFORMANCE
MANAGEMENT, L.L.C.,

    Defendant.

Case No. 2:15-cv-12082
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [6]**

    Plaintiff Carmelisha Ayers claims that in January 2015, she received a phone call about a debt. She told the person on the phone, a representative of Defendant Receivables Performance Management, LLC, that they had the wrong number and that she did not want RPM to call her anymore. But, says Ayers, RPM continued to call her. So she filed this lawsuit.

    Despite service on its registered agent, RPM has not defended the lawsuit. The clerk entered a default against RPM, and now Ayers asks the Court to enter a default judgment. (*See* R. 6.) RPM again has not responded. Having reviewed Ayers' briefing, the Court will forego oral argument, *see* E.D. Mich. LR 7.1(f)(2), and will GRANT IN PART Ayers' motion for a default judgment.

**I.**

**A.**

    Because Ayers seeks a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court accepts the factual allegations of her complaint as true and presents them as fact. *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 & n.7 (E.D. Pa. 2014);

*McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. Apr. 27, 2011).

At some point, Jamie Collins, whom Ayers does not know, became indebted to a creditor. (R. 1, PID 2.) The debt was "primarily for family, personal or household purposes." (*Id.*) At some later point, Defendant "RPM was employed by the [c]reditor to collect the [d]ebt" or the debt was "purchased, assigned or transferred to RPM for collection." (*Id.*)

In January 2015, RPM called Ayers on her cell phone in an attempt to collect the debt Collins owed. (R. 1, PID 2.) This was despite that Ayers had never provided her cell phone number to RPM or the creditor and that she had never provided her consent to be contacted on her cell phone to RPM or the creditor. (R. 1, PID 5.) Ayers informed RPM that it had called her cell phone and that the debtor could not be reached at that number. (R. 1, PID 3.) Ayers also told RPM "to remove her telephone number from the account and cease all calls to her." (*Id.*) Nonetheless, RPM continued to call Ayers in an attempt to collect the debt. (*Id.*)

**B.**

Based on the foregoing, in June 2015, Ayers filed suit asserting that RPM had violated both the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act. (R. 1, PID 3–4.) According to an affidavit filed by Ayers' process server, RPM's registered agent was served with the complaint and a summons on July 27, 2015. (R. 3, PID 12.)

But RPM did not answer Ayers' complaint. So in September 2009, Ayers sought (R. 4) and obtained (R. 5) a clerk's entry of default against RPM. *See* Fed. R. Civ. P. 55(a).

In January 2016, Ayers moved for a default judgment. (R. 6.)

2

## II.

While a defendant may waive a personal jurisdiction challenge or chose to contest it later in the proceedings or in a collateral proceeding, courts have nonetheless *sua sponte* addressed the issue prior to entering a default judgment. *E.g.*, *Amica Mut. Ins. Co. v. Epplett*, No. 15-10442, 2015 WL 5439946, at *3 (E.D. Mich. Sept. 15, 2015) (citing cases). It appears that the rationale for doing so, as set forth by one of the seminal cases on the issue (if not the seminal case), is that since a judgment is void without jurisdiction over the defendant, the court should first find jurisdiction over the defendant before entering judgment. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).

The Court will leave for another day whether it is always required to *sua sponte* address personal jurisdiction because, in this case, Ayers' complaint makes a *prima facie* showing that this Court may exercise jurisdiction over RPM.[1] As such, addressing the issue will not adversely affect Ayers (as would be the case if a *prima facie* showing was lacking). Further, as this Court only makes a *prima facie* finding and RPM has not litigated the issue, the Court does not believe that its ruling should have any preclusive effect should RPM seek to challenge personal jurisdiction in this or a collateral proceeding. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds

---

[1] This Court found no binding authority on the issue. In a non-binding decision, a panel of the Sixth Circuit stated, "Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment." *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010). But in *Parnes*, the defendant had filed a motion to vacate based, in part, on lack of personal jurisdiction. In other words, the defendant in *Parnes* ultimately appeared and raised a personal-jurisdiction defense. Moreover, *Parnes* cited *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006), for its "threshold issue" statement, but in *Kroger*, the defendant had appeared and raised a personal-jurisdiction defense.

in a collateral proceeding."); *Homer v. Jones-Bey*, 415 F.3d 748, 753 (7th Cir. 2005) ("If the district court had no jurisdiction over the movant, its judgment is void and it is an abuse of discretion to deny the movant's request to set aside the judgment under Rule 60(b).").

"When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *Alixpartners, LLP, v. Brewington*, — F.3d —, No. 16-1027, 2016 WL 4578358, at *3 (6th Cir. Sept. 2, 2016).[2]

Michigan's long-arm statute permits this Court to exercise jurisdiction over RPM. Under section (2) of the statute, if RPM "d[id] or caus[ed] any act to be done, or consequences to occur, in [Michigan] resulting in an action for tort," RPM can be required to defend a case filed in Michigan. *See* Mich. Comp. Laws § 600.715(2). Ayers says that RPM repeatedly called her, which is an intentional act. And Ayers is a Michigan resident, so any injury from RPM's calls was felt in Michigan. *See Green v. Wilson*, 565 N.W.2d 813, 817 (Mich. 1997) (providing that under § 600.715(2), "either the tortious conduct or the injury must occur in Michigan"); *Rohn v. Commercial Recovery Sys., Inc.*, No. 13-CV-10780, 2013 WL 6195578, at *4 (E.D. Mich. Oct. 29, 2013) (finding that non-forum defendant's calls to a Michigan plaintiff giving rise to a FDCPA claim was conduct that fell within § 600.715(2)), *report and recommendation adopted by*, 2013 WL 6195578 (E.D. Mich. Nov. 26, 2013).

---

[2] Federal courts have often said that because Michigan's long-arm statute extends to the full reach of what constitutional due-process allows, a court in Michigan answering the personal-jurisdiction question need only conduct a due-process inquiry. *E.g.*, *Alixpartners*, 2016 WL 4578358, at *3. But the Michigan Supreme Court has said this is not correct. *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997); *see also Finnsugar Bioproducts, Inc. v. Monitor Sugar Co.*, No. 00–10381–BC, 2002 WL 31758644, at *4 (E.D. Mich. Sept. 30, 2002).

As for the Due Process Clause, the exercise of personal jurisdiction over RPM comports with that constitutional provision if (1) RPM "purposefully avail[ed] [it]self of the privilege of acting in [Michigan] or causing a consequence in [Michigan]," (2) the cause of action arises from RPM's activities in Michigan, and (3) "the acts of [RPM] or consequences caused by [RPM] . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014).

Given that RPM has not appeared, and that Ayers need only make a *prima facie* showing, the Court finds the purposeful-availment prong to be satisfied. RPM elected to dial a phone number with a Michigan area code for the purpose of collecting a debt. In other words, Ayers effectively reached into Michigan to conduct business. Other courts have found that this amounts to purposeful availment. *See Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) ("The Court agrees with Luna that where Shac intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, Shac expressly aimed its conduct at California."); *Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-CV-00435, 2014 WL 2938626, at *9 (W.D. Pa. June 30, 2014) ("[W]e note that the call made by [Defendant] CCL was to a phone number bearing a (412) area code—such a code is limited to residents of Pennsylvania. By initiating a call to such a number, it can be said that Defendant CCL 'expressly aimed their conduct at Pennsylvania' because the number was associated with the State of Pennsylvania. . . . This satisfies the requirement for sufficient minimum contacts under the law."); *Rohn*, 2013 WL 6195578, at *5 (finding that defendant purposefully availed itself to the benefits of doing

business in Michigan where it called a Michigan resident about a debt). Without briefing from RPM, the Court reaches the same conclusion.

The other two prongs of the specific-jurisdiction test are satisfied as well. It is plain that both Ayers' FDCPA and TCPA claims arise out of RPM's calls. Indeed, RPM's calls are virtually the entire basis for those two causes of action. As for the third requirement, once the first two are met, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007). Here, RPM has not appeared so it has not presented any compelling case. And, given the record before the Court, there is no undue unfairness in requiring RPM to defend here. To be sure, it is more costly for an LLC whose members likely reside in Washington to defend a case in Michigan. But it was not Ayers who made a call to Washington—it was RPM that called a Michigan resident. And it would likely be burdensome on Ayers to pursue her claim there. Moreover, "Michigan has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents." *Rohn*, 2013 WL 6195578, at *5.

In short, on the record before the Court, and absent any argument from RPM, Ayers has made a *prima facie* showing that this Court may exercise personal jurisdiction over RPM.

**III.**

When, as here, a plaintiff seeks a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), she has the burden of establishing both liability and damages.

As for liability, Ayers' burden is similar to the one she must satisfy had RPM sought to dismiss her complaint pursuant to Rule 12(b)(6): the Court accepts as true the well-pled factual allegations of Ayers' complaint, draws reasonable inferences from those allegations in her favor,

6

and then asks whether Ayers has stated a claim upon which relief may be granted. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010); *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 & n.7 (E.D. Pa. 2014).

As for damages, the complaint's allegations about those are not simply accepted as fact, and so the Court may demand a plaintiff to prove her damages at an evidentiary hearing. *See Joe Hand Promotions*, 3 F. Supp. 3d at 271; *McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. Apr. 27, 2011). But such a hearing is not necessary "if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits." *See Joe Hand Promotions*, 3 F. Supp. 3d at 271 & n.8; *McIntosh*, 2011 WL 1595150, at *4.

Finally, even if liability and damages are established, the decision to enter a default judgment remains committed to the district court's sound discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013); *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009).

### IV.

The Court addresses first the issue of liability. It then turns to damages. Lastly, the Court addresses the discretionary factors that inform the Court's decision to enter a default judgment.

### A.

### 1.

Ayers says that RPM is liable under two sections of the Fair Debt Collection Practices Act: 15 U.S.C. § 1692d and § 1692f. Upon a review of these statutory provisions, the Court finds that Ayers' complaint, at least when supplemented with the allegations set out in her affidavit, shows that RPM violated § 1692d.

Section 1692d provides in relevant part, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." It then says, "Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d. Here, Ayers says that she told RPM that the debtor could not be reached at her cell phone number and requested that RPM not call again, but "RPM continued to place automated calls to [my] cellular telephone in an attempt to collect the [d]ebt." (R. 1, PID 2–3, 5.) Thus, the question is whether the "natural consequence" of this conduct "[wa]s to harass," § 1692d, or whether RPM "repeatedly or continuously" called Ayers "with intent to annoy, abuse, or harass," § 1692d(5).

If the Court limits itself to Ayers' complaint, the answer is a close call. On the one hand, Ayers references additional "calls" after she told RPM not to call. So clearly there were multiple calls. Once RPM was on notice that Plaintiff was not the debtor, the natural inference is that the intent of the additional calls was to annoy, abuse, or harass her. Indeed, her complaint refers to the calls under the heading "RPM Engages in Harassment and Abusive Tactics." (R.1, Complaint at PID 2.) On the other hand, "calls" could be as few as two. And although reasonable inferences from Ayers' allegations should be drawn in her favor, Ayers' complaint requires the Court to speculate about the number of calls, when the calls were made (e.g., late at night), whether Ayers answered the calls, what was said if she did answer (e.g., threats), and how frequent the calls were (e.g., six in one day). If RPM's conduct was more like two mid-day calls over a month—even accepting that those two calls came after a request to stop—RPM would not likely have violated § 1692d. *See Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp. 2d

8

485, 490 (S.D. Ohio 2012) (finding, as a matter of law, no violation of § 1692d where, within a 73-day period, debt collector made 30 calls to debtor and two calls to debtor's roommate, one of which was after the roommate informed collector that number was incorrect); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010) (finding, as a matter of law, no violation of § 1692d where collector called debtor on a near daily basis but there was "no evidence that [the collector] called [debtor] immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested [collector] to cease calling"); *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (finding, as a matter of law, no violation of § 1692d where there were at least 20 calls to debtor over a one month period, including some following the debtor's request to stop calling, but where debtor failed to show that the "amount, frequency, pattern, or content" of the calls amounted to anything but "a legitimate, albeit persistent, effort to reach her"); *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1143–44 (D. Kan. 2004) ("KCI simply placed four telephone calls to plaintiffs over the course of seven days and chose not to leave a message. There is nothing harassing, oppressive, or abusive about this conduct.").

The Court does not need to make this close call. In an affidavit attached to her motion for default judgment, Ayers provides a key fact missing from her complaint: she says that RPM called her about 22 times after she told them to stop calling. (R. 6, PID 37.) The allegations of Ayers' complaint, once supplemented with this allegation, permit the reasonable inference that the "natural consequence" of RPM's 22 calls "[wa]s to harass" or that RPM "repeatedly or continuously" called Ayers "with intent to annoy, abuse, or harass." *See* 15 U.S.C. § 1692d.

It is true that some courts have held that a court should not look beyond the four corners of the complaint in assessing liability under Rule 55(b)(2). *See Cty. of Suffolk v. Golden Feather Smoke Shop, Inc.*, No. 09CV162CBAVMS, 2016 WL 1245001, at *5 n.4 (E.D.N.Y. Mar. 23, 2016) ("Although the County urges the Court to look outside the four corners of the complaint in assessing liability, the law is clear that in evaluating a default judgment motion the Court is limited to the non-conclusory, factual allegations in the complaint." (internal quotation marks, citations, and alterations omitted)); *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 (E.D.N.Y. 2013) (finding that magistrate judge erred in considering exhibits that were not attached to or referenced in the complaint in recommending entry of a default judgment). The rationale behind this rule is that a defendant should be able to review a complaint, and, if it is confident that the complaint fails to state a claim for relief, elect to conserve its resources and not defend the case. *See Siemieniewicz v. CAZ Contracing Corp.*, No. 11-CV-0704, 2012 WL 5183375, at *9 (E.D.N.Y. Sept. 21, 2012) ("[Rule 55] not only provides a just and efficient remedy for a plaintiff confronted by a defendant's recalcitrance; it also allows a defendant to review a deficient complaint and make the rational decision to expend no resources in answering it."), *report and recommendation adopted in relevant part*, 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012).

But this rationale does not apply with great force in this case. Certificates of service attached to Ayers' motion indicate that Ayers mailed her motion for default judgment, to which her affidavit is attached, to RPM's place of business. (R. 6, PID 41.) Under the Federal Rules of Civil Procedure, this mailing constitutes proper service. Fed. R. Civ. P. 5(b)(2) ("A paper is served under this rule by . . . (C) mailing it to the person's last known address—in which event service is complete upon mailing."). Thus, it is fair to say that RPM knew of Ayers' claim of 22

10

calls. And so even if RPM had made an initial assessment that Ayers' complaint did not state a violation of § 1692d, it would not be unfair to say that RPM should have reassessed the strength of Ayers' case upon receipt of her affidavit. Yet RPM has not appeared in this case to set aside the default or to oppose Ayers' motion for default judgment. On these facts, the Court finds it proper to consider Ayers' affidavit in assessing whether RPM engaged in conduct that § 1692d prohibits. *See Gordon v. Enhanced Acquisitions LLC*, No. 14-13839, 2015 WL 7423809, at *1 (E.D. Mich. Nov. 23, 2015) (considering plaintiff's affidavit in determining whether defaulted defendant was liable under the FDCPA); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, No. CV 2012-1264 CBA MDG, 2014 WL 1310296, at *4 (E.D.N.Y. Mar. 11, 2014) (considering plaintiff's affidavit because defendants had received notice of the supplemental allegations when plaintiff served motion for default judgment and because it would be "inefficient" to require plaintiff to file an amended complaint), *report and recommendation adopted*, 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014).

In short, the Court finds that Ayers' complaint, at least when supplement with Ayers' affidavit, states a violation of § 1692d. And because Ayers does not assert that she is entitled to different damages for a violation of § 1692f, the Court does not address Ayers' § 1692f claim.

**2.**

Ayers' complaint also permits the reasonable inference that RPM violated the Telephone Consumer Protection Act.

When Ayers filed this suit, the section of the TCPA upon which she relies read, "It shall be unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, Ayers only needed to plead facts showing that "(1)

11

a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or pre-recorded message, and (3) without prior consent of the recipient plaintiff." *Duchene v. Onstar, LLC*, No. 15-13337, 2016 WL 3997031, at *1 (E.D. Mich. July 26, 2016).

The factual allegations of Ayers' complaint satisfy these elements. In particular, Ayers has alleged that RPM called her cell phone and that she did not give RPM or the creditor her cell phone number or permission to call her cell phone. That takes care of the first and third elements. And the TCPA defines an automatic telephone dialing system as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). In that regard, Ayers has pled that when she answered calls from RPM, "she heard silence or music followed by an automated click before being transferred to a RPM operator." (R. 1, PID 2.) That satisfies the second element.

It would thus seem that the TCPA-liability analysis is complete. But after a default was entered against RPM, and before Ayers moved for a default judgment, the provision of the TCPA upon which Ayers relies was amended. Effective November 1, 2015, § 227(b)(1)(A)(iii) makes it unlawful to use an automatic telephone dialing system to call a cell phone "unless such call is made solely to collect a debt owed to or guaranteed by the United States." At least one court has not only applied this new language to a lawsuit pending at the time of the amendment, but also held that the defendant was not liable under the new exception because it was collecting a federal student loan. *See generally Silver v. Pennsylvania Higher Educ. Assistance Agency*, No. 14-CV-0652-PJH, 2016 WL 1258629 (N.D. Cal. Mar. 31, 2016). And here, Ayers' complaint

12

does not plead that the debt was not owed to or backed by the United States. So does the Court's conclusion that Ayers' complaint states a violation of § 227(b)(1)(A)(iii) stand?

Given the current procedural posture, the answer is "yes." There is support for the proposition that when a statute uses words like "unless" or "except," what follows those terms is an affirmative defense, not an element of the claim. *See Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 44–45 (1948) ("the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits"); *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362, 367 (3d Cir. 2015) (analyzing "unless" language in the FDCPA and applying rule that a "party seeking shelter in an exception to a statute has the burden of proving it"); *United States v. Franchi-Forlando*, 838 F.2d 585, 591 (1st Cir. 1988) ("[W]e recognize that the language that asserts the 'approved drug' portion of § 952(a) and the 'listed in the manifest' portion of § 955 makes them exceptions to a general rule of liability. That is to say, the statutes introduce those portions with the words 'unless' and 'except,' and [criminal] defendants may have to treat them as affirmative defenses."). Given this law—and because RPM has not appeared in this case to argue that the "unless" clause of § 227(b)(1)(A)(iii) is not an affirmative defense—the Court finds that Ayers was not required to plead that RPM's calls were not made "to collect a debt owed to or guaranteed by the United States."

In short, when the well-pled factual allegations of Ayers' complaint are accepted as true, RPM violated 47 U.S.C. § 227(b)(1)(A)(iii).

**B.**

This leads to the question of damages. The Court first addresses damages under the FDCPA and then the TCPA.

**1.**

Under the FDCPA, a plaintiff may recover actual damages caused by the debt collector's wrongful conduct. *See* 15 U.S.C. § 1692k(a)(1). Here, Ayers claims that RPM's conduct caused her $5,000 in actual damages. (R. 6, PID 28–29.)

The Court declines to award Ayers $5,000 under § 1692k(a)(1). Both the allegations of Ayers' complaint and those in her affidavit are conclusory on how RPM's calls caused harm. In her complaint, Ayers says, "[a]s a direct consequence of Defendant's acts, practices and conduct, Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment." (R. 1, PID 3.) Similarly, in her affidavit, Ayers avers, "[a]s a result of RPM's repeated phone calls to me after I asked it to cease calling me, I suffered and continue to suffer from anger, anxiety, and emotional distress." (R. 6, PID 37.) Missing from these allegations is *how* RPM's conduct caused emotion distress. Did RPM call at unpredictable times? Did RPM's calls interrupt sleep or work? Did RPM call three times in a row? Or, perhaps, did Ayers ignore the calls upon seeing RPM's number on her caller ID? (*See* R. 6, PID 36.) And why were RPM's calls embarrassing? Did anyone know that the number on Ayers' cell phone was that of a debt collector? In addition, Ayers provides no medical records or even lay evidence of any treatment that she required due to RPM's calls. Arguably then, Ayers is not entitled to any actual damages. *See Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) ("Where, as here, the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." (internal quotation marks omitted)), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

But because RPM has not appeared to advocate the position in *Wantz*, and because courts in this District have awarded a reduced amount of actual damages in comparable scenarios, this Court will award Ayers $500 in actual damages under § 1692k(a)(1). *Cf. Gordon v. Enhanced Acquisitions LLC*, No. 14-13839, 2015 WL 7423809, at *2 (E.D. Mich. Nov. 23, 2015) (awarding $3,000 in emotional distress damages under the FDCPA where plaintiff requested $25,000 because plaintiff had not "submitted any medical records or other evidence corroborating the emotional distress alleged"); *Hett v. Bryant Lafayette & Associates, LLC*, No. 10-CV-12479, 2011 WL 740460, at *3 (E.D. Mich. Feb. 24, 2011) (awarding $2,000 in emotional distress damages under the FDCPA where plaintiff requested $20,000 because plaintiff had not "presented any medical records, telephone records, witness affidavits, or other evidence to substantiate his claimed damages").

Ayers also seeks statutory damages under the FDCPA. Section 1692k(a)(2)(A) provides that, in addition to actual damages, a "court may allow" damages "not exceeding $1,000." In this case, the Court believes that RPM's 22 additional calls after Ayers told RPM to stop calling warrants the full $1,000 in statutory damages. *See* 15 U.S.C. § 1692k(b)(1) (directing courts to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional").

In sum, for violating the FDCPA, the Court finds that RPM owes Ayers $1,500 in damages.

**2.**

As for damages under the TCPA, that Act provides, "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring . . . an action to

recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5)(B).

As noted, Ayers' uncontradicted affidavit provides that she received "approximately twenty-two" calls after she told RPM that it had the wrong number for the debtor. (R. 6, PID 37.) Ayers claims that under subparagraph (B) of § 227(c)(5) she is entitled to $500 for each of these 22 calls, or $11,000 total. (R. 6, PID 32.)

The Court agrees. Given the repeated calls following Ayers' request, the Court believes the full $500 per call permitted by subparagraph (B) of § 227(c)(5) is proper, i.e., that Ayers is entitled to $11,000 total under subparagraph (B).

Ayers, relying on another part of § 227(c)(5), asks this Court to treble the $11,000 award. The language upon which Ayers relies reads, "If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(c)(5).

Courts, apparently, have construed "willfully or knowingly" differently. Some have suggested (if not held) that the defendant must know that its conduct is prohibited by the TCPA. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001); *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012). Others have adopted an interpretation of "willfully or knowingly" that "simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute." *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *7 (N.D. Ill. Mar. 19, 2013). And in *Harris v. World Fin. Network National Bank*, a court in this District found that the defendant's violations of the TCPA were willful because the

16

defendant continued to call after being informed that it had the wrong number. 867 F. Supp. 2d 888, 896 (E.D. Mich. 2012).

Given that there is no briefing on this issue (and that this case is being litigated from only one side), the Court will not attempt to address this split in authority. Instead it assumes without deciding that RPM willfully violated § 227(b)(1)(A)(iii) by calling Ayers 22 times after being told that it had the wrong number.

The Court can proceed this way because, even if RPM's conduct was willful or knowing, enhanced damages are not proper in this case. As an initial matter, there is a good argument to be made that the enhanced-damages provision was meant to compensate the plaintiff rather than punish the defendant. *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 778–79 (11th Cir. 2011). And here, as stated, Ayers' allegations of "humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment" are conclusory and provide little detail of the disruption to her life. Second, the Court has not heard RPM's side of the story. To be sure, that is its own fault. But the possibility that there may be some valid reason that RPM continued to call Ayers after she informed them that they had the wrong number counsels against enhancing damages.

In sum, the Court finds that for violating the TCPA, RPM owes Ayers $11,000.

**3.**

Before ending the damages inquiry, the Court must address one more issue. As discussed earlier, a defendant is permitted to examine a complaint and decide that a default judgment may be preferable to fighting the lawsuit. So, for example, had Ayers' complaint demanded only $2,000 in damages, RPM could decide to default safe in the assumption that it would owe Ayers not a penny more than $2,000. In that situation, it would be improper to award Ayers $12,500,

17

even if she proved those damages at the default-judgment stage. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer.").

But Ayers' complaint did not cap her damages. Moreover, her complaint provided the legal basis for claims of actual, statutory, and punitive damages, and attorneys' fees. In other words, Ayers' damages demand gave RPM fair notice that it could be liable for an amount in the range of $12,500. *See Trustees of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-15-521, 2016 WL 297425, at *5 (D. Md. Jan. 21, 2016) (discussing split in authority, but finding that the better rule is that Rule 54(c) is not abridged where complaint gives defendant fair notice that plaintiff was seeking unspecified damages and the grounds for those damages); *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005) ("Although Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default.").

## C.

As noted, even when the plaintiff has demonstrated liability and damages, a default judgment does not automatically follow. Instead, the court must exercise its discretion in deciding whether to enter a default judgment under Rule 55(b)(2).

Factors informing the court's discretion include, "the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue;

whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (internal quotation marks and citation omitted).

Upon considering these and other factors, the Court finds that a default judgment against RPM in the amount of $12,500 is warranted. The grounds for default are clearly established: a certificate of service was filed in this case indicating that RPM's registered agent was served with the summons and complaint on July 27, 2015. (R. 3.) Thus, RPM had fair notice of this suit and the relief sought and yet it did not appear to defend. Further, the damages in this case are not so large that the Court is concerned that it would be unduly prejudicial to RPM. Finally, while there are unsettled legal issues of general interest raised by Ayers' motion, the Court has not seen the need to resolve them. All in all then, the Court believes that a default judgment is proper in this case.

### V.

For the reasons given, the Court GRANTS IN PART Ayers' motion for a default judgment. In particular, the Court finds that RPM violated both 15 U.S.C. § 1692d and 47 U.S.C. § 227(b)(1)(A)(iii). And for these violations of the FDCPA and TCPA, the Court concludes that RPM owes Ayers $12,500. Ayers is granted leave to file a well-supported motion for attorney fees under the FDCPA, 15 U.S.C. § 1692k(a)(3).

**SO ORDERED.**

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: September 28, 2016                     U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2016.

                                            s/Keisha Jackson
                                            Case Manager